IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Mauldin Furniture Galleries, Inc., | ) | |
| | ) | C.A. No. 6:10-240-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Branch Banking & Trust Company, | ) | |
| | ) | |
| Defendant. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

In this case, the plaintiff, Mauldin Furniture Galleries (Mauldin Furniture) asserts conversion claims against the defendant Branch Banking and Trust (BB&T) under both South Carolina common law and Article 3 of the Uniform Commercial Code (UCC), codified at S.C. Code Ann. § 36-3-419 (2003). Before the court are cross-motions for summary judgment by Mauldin Furniture (Dkt. No. 86) and BB&T (Dkt. No. 87). The court held a hearing on both motions on May 10, 2012. For the reasons set forth below, the court denies Mauldin Furniture's motion for summary judgment. (Dkt. No. 86.) The court grants in part and denies in part BB&T's motion for summary judgment. (Dkt. No. 87.)

**I.**

Mauldin Furniture is a furniture retail store located in Mauldin, South Carolina. Incorporated in 1988, Lois Satterfield (Satterfield) and Anthony Hogan (Hogan) each own a 50% interest in the operation. Satterfield, a widow in her 70s, is the president and secretary of Mauldin Furniture, while Hogan is the vice president and treasurer. The two are and always have been the only directors and officers of Mauldin Furniture. In 1992, the company opened up a commercial checking account with BB&T for its banking business under the name "Mauldin Furniture Galleries, Inc." In accordance with their positions as officers, both Satterfield and

Hogan were added as signatories on this account.

Throughout Mauldin Furniture's existence, Hogan handled the day-to-day activities of the company.[1] As president, Satterfield had no specific duties. Both Satterfield and Hogan acknowledge that she had no day-to-day involvement. From time to time, Satterfield would inquire as to the health of the company's finances and business operations, and Hogan would inform her that business was poor and the store was generating very little profit. Satterfield also inquired of BB&T on occasion as to the company's account balance, and BB&T confirmed to her that the account balance was low.[2]

In 1998, Hogan incorporated Anthony P. Hogan Company, Inc. (Hogan Company).[3] Hogan was the sole owner, director, and officer of Hogan Company, which was likewise engaged in the sale of furniture. According to deposition testimony, Hogan ran Hogan Company out of Mauldin Furniture's building and used both Mauldin Furniture vehicles and employees for its operations. Hogan also opened an account with BB&T on behalf of Hogan Company; the account statements for Hogan Company's BB&T account were delivered to the Mauldin Furniture address or a post office box. Hogan maintains that he opened Hogan Company for the benefit of Mauldin Furniture and to obtain certain lines of furniture unavailable to Mauldin Furniture. At no point did Hogan ever inform Satterfield about the existence of Hogan Company or its operations at Mauldin Furniture's building.

In August of 2000, Mauldin Furniture alleges, Hogan began depositing checks written by customers payable to Mauldin Furniture into the Hogan Company account at BB&T. From

---

[1]    These activities included store operations, inventory purchases, customer relations, vendor relations, personnel issues, and finances.

[2]    Satterfield never reviewed ledgers or financial records or discussed the company's finances with anyone other than Hogan.

[3]    According to the South Carolina Secretary of State's records, Hogan Company was dissolved in July 2012.

August 2000 to August 2008, precisely 531 checks—totaling $527,309.47—written payable to Mauldin Furniture were deposited in Hogan Company's BB&T account.

In August 2008, Satterfield's grandson discovered invoices at the Mauldin Furniture store stamped with "Anthony P. Hogan Company." At that point, Satterfield became aware of Hogan Company's existence—and she suspected fraud. Satterfield notified law enforcement, which confiscated Mauldin Furniture's financial records. In 2009, after an investigation, Satterfield discovered that the disputed checks payable to Mauldin Furniture had been deposited in the Hogan Company account at BB&T.[4] To date, Hogan has not been charged with a crime.

On December 31, 2009, Mauldin Furniture filed this action for conversion in the Greenville County Court of Common Pleas. BB&T removed the case to this court on February 1, 2010. (Dkt. No. 1.) In the complaint, Mauldin Furniture asserts claims against BB&T for common law conversion, "conversion under the UCC for failure to pay or apply value consistent with a restrictive endorsement," and for "conversion under the UCC for payment to persons not entitled to receive such payment." Mauldin Furniture seeks both actual and punitive damages. BB&T filed an answer on February 5, 2010, denying liability and asserting various defenses. (Dkt. No. 5.)

Both parties filed cross-motions for summary judgment. In Mauldin Furniture's motion for partial summary judgment[5], it alleges that BB&T is liable for conversion on each of the 531 checks under the UCC. (Dkt. No. 86.) Mauldin Furniture also divided the 531 checks at issue into five distinct categories:

    <u>Category A</u>:   Checks made payable to "Mauldin Furniture" and indorsed with a

---

[4]    Satterfield's son, Tim Satterfield, was placed in charge of the store. The Satterfields and Mauldin Furniture have filed a complaint against Hogan in state court.

[5]    Mauldin Furniture seeks punitive damages in its complaint, which constitute a matter determinable at trial. Thus, the issue of punitive damages is not part of Mauldin Furniture's motion.

Mauldin Furniture Galleries "For Deposit Only" stamp (and listing the Mauldin Furniture's BB&T account number).

**58** checks totaling **$43,799.92**.

Category B:    Checks made payable to "Mauldin Furniture," with no indorsement or indorsed with "AP Hogan," "AP Hogan Co.," or "AP Hogan/Mauldin Furniture Galleries."

**184** checks totaling **$191,552.46**.

Category C:    Checks made payable to "Anthony P Hogan Company *and* Mauldin Furniture" and indorsed with "AP Hogan".

**1** check totaling **$1,200.00**.

Category D:    Checks made payable to "Mauldin Furniture" but allegedly altered and marked through with "AP Hogan" made the payee. These checks contained no endorsement or were indorsed with "AP Hogan Co." or with the Mauldin Furniture "For Deposit Only" stamp.

**87** checks totaling **$76,620.62**.

Category E:    Checks made payable to "Mauldin Furniture/AP Hogan," "AP Hogan/Mauldin Furniture," "Mauldin Furniture or Anthony P. Hogan," where the "/AP Hogan", "AP Hogan/," "or Anthony P. Hogan," or the "Anthony P. Hogan or" is in a different handwriting. These checks contained either no indorsement or were indorsed to AP Hogan Co.

**201** checks totaling **$214,136.47**.

In BB&T's motion for summary judgment, it alleges that (1) Hogan had authority to indorse the checks in the manner he did; (2) common law conversion was displaced by the adoption of the UCC's conversion provisions; (3) Mauldin Furniture's claims as to checks written prior to December 31, 2006 violate the statute of limitations; (4) Mauldin Furniture's claims as to Categories F, D, and B fail under the UCC.

The court grants BB&T's motion for summary judgment as to the common law conversion claim. Common law conversion as to negotiable instruments was displaced by the adoption of UCC Article 3. *See Flavor-Inn, Inc. v. NCNB Nat'l Bank of S.C.*, 309 S.C. 508, 511–512, 424 S.E.2d 534, 536 (holding

that section 36-3-419 displaces common law conversion/negligence claims for deposit of a check with a forged or unauthorized indorsement) (citing *Equitable Life Assurance Soc'y of the U.S. v. Okey*, 812 F.2d 906, 908 (4th Cir. 1987). As to the remainder, the court will address both motions and the issues raised therein accordingly.

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Rule 56, Fed. R. Civ. P. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party, of course, bears the initial burden in showing the court that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. Following this initial showing, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Id.* at 322. To do so, the nonmoving party must present more than a mere scintilla of evidence that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 252. The court construes all facts and reasonable inferences arising therefrom in a light most favorable to the nonmoving party. *EEOC v. Central Wholesalers, Inc.*, 573 F. 3d 167, 174 (4th Cir. 2009).

## III.

Primarily at issue here is the prior UCC conversion statute, which states, in pertinent part,

(1) An instrument is converted when

. . .

(c) it is paid on a forged indorsement.

. . . .

(3) Subject to the provisions of this act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealth with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner . . . .

S.C. Code Ann. § 36-3-419 (2003).[6] The statute of limitations for conversion claims under the UCC is three years. *See* S.C. Code Ann. § 15-3-530 (2005); *Anonymous Taxpayer v. S.C. Dep't of Revenue*, 377 S.C. 425, 438, 661 S.E.2d 73, 80 (2008) ("The statute of limitations for actions pursuant to contract or statute is three years.") In light of the statute of limitations, BB&T argues that Mauldin Furniture is barred from recovery as to any checks written three years prior to the commencement of this action, or December 31, 2006. In response, Mauldin Furniture argues that the cause of action did not accrue, by virtue of the discovery rule, until Satterfield discovered Hogan's alleged duplicity in early 2009. BB&T further argues that even if the discovery rule applies, Mauldin Furniture was on notice and the claims are nonetheless barred. The court holds that the discovery rule does apply to the statute of limitations. Furthermore, whether Satterfield had constructive notice as to these claims such that the statute had nonetheless run is a question of fact, the determination of which is inappropriate at the summary judgment stage.

Under the discovery rule, "a statute of limitations begins to run when the party either knew or should have known that some legal right had been invaded." *City of Newberry v. Newberry Elec. Co-Op., Inc.*, 387 S.C. 254, 260, 692 S.E.2d 510, 513 (2010) (citing *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005); *see also Dean v. Ruscon Corp.*, 321 S.C.

---

[6]     At the outset, the court notes that the South Carolina General Assembly adopted the modified Uniform Commercial Code effective July 1, 2008. However, the dispute here concerns events that occurred prior to July 1, 2008. Accordingly, all references here implicate pre-2008 versions of the statutes.

360, 363, 468 S.E.2d 645, 647 (1996) ("The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct."); *Johnston v. Bowen,* 313 S.C. 61, 64, 437 S.E.2d 45, 47 (1993) ("[T]he injured party must act with some promptness where facts and circumstances of the injury would put a person of common knowledge and experience on notice that some right of his had been invaded or that some claim against another party might exist.").

As BB&T correctly points out, no South Carolina court has ever held that the discovery rule applies to conversion claims under the UCC. On the other hand, however, BB&T fails to cite any South Carolina authority for the proposition that the discovery rule is inapplicable to conversion actions such as this one.[7] Accordingly, this court must determine how the South Carolina Supreme Court would respond if confronted with this very issue. To do so, the court will take note of the actions in other jurisdictions and the competing policy concerns.

A majority of states to address this question have held that the discovery rule does not apply to UCC conversion claims[8]; however, other states have rule the other way[9], and neither

---

[7]    The court notes that neither party has requested certification of this question to the South Carolina Supreme Court.

[8]    BB&T cites cases from Illinois, Iowa, Michigan, Mississippi, Nebraska, New York, North Carolina, Ohio, South Dakota, Texas, and Virginia. *See*, respectively, *Haddad's of Il. v. Credit Union 1 Credit Union*, 678 N.E.2d 322, 325 (Ill. App. Ct. 1997); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477–78 (Iowa 1990); *Insurance Co. of N. America. v. Manufacturers Bank of Southfield, N.A.*, 338 N.W.2d 214, 216 (Mich. 1983); *Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 148 (Miss. 1998); *Mandolfo v. Mandolfo*, 796 N.W.2d 603 (Neb. 2011); *Gerber v. Manufacturers Hanover Trust Co*., 64 Misc.2d 687, 688-89, 315 N.Y.S.2d 601, 603 (N.Y. 1970); *First Investors Corp. v. Citizens Bank, Inc*., 757 F. Supp. 687, 690 (W.D.N.C. 1991); *Palmer Mfg. & Supply, Inc. v. BancOhio Natl. Bank*, 637 N.E.2d 386, 390-391 (Ohio App. 2 Dist.1994); *Wang v. Farmers State Bank of Winner*, 447 N.W.2d 516, 518-19 (S.D.1989); *Lyco Acquisition 1984 Ltd. Partnership v. First Nat'l Bank of Amarillo*, 860 S.W.2d 117, 119 (Tex. Ct. App. 1993); *Stefano v. First Union National Bank of Virginia*, 981 F. Supp. 417, 421 (E.D. Va. 1997).

[9]    Mauldin Furniture cites cases from Arizona, Colorado, Florida Massachusetts, New Jersey, and Ohio. *See*, respectively, *YF Trust v. JP Morgan Chase Bank*, 2008 WL 4277902 at *3–*4 (D. Ariz. Sept. 18, 2008); *Stjernhold v. Life Ins. Co. of N. America*, 782 P.2d 810, 811–12 (Colo. Ct. App. 1989); *Branford State Bank v. Hackney Tractor Co.*,455 So.2d 541, 542 (Fla. Dist. Ct. App. 1984) (per curiam); *Fine v. Sovereign Bank*, 2010 WL 3001194 at *4–*5 (D. Mass. July 28, 2010); *DeHart v. First Fidelity Bank, N.A. S. Jersey*, 67 B.R. 740, 743-46 (D.N.J. 1986); *Geraldo v. First Dominion Mutual Life Ins. Co.*, 2002 WL 31002770 at *4 (Ohio Ct. App. Sept. 6, 2002.).

position commands a majority of all of the states. Courts declining to apply the discovery rule have identified the competing policy concerns weighing against the application of the discovery rule to the UCC: negotiability of instruments, finality of commercial transactions, and uniformity of law among jurisdictions. *See Menchini v. Grant*, 995 F.2d 1224, 1229 (3rd Cir. 1993); s*ee also John Hancock Financial Services, Inc. v. Old Kent Bank*, 346 F.3d 727, 733 (6th Cir. 2003) ("[T]here is strong public policy favoring finality on a conversion claim on a negotiable instrument."); *Mandolfo v. Mandolfo*, 796 N.W.2d 603, 611 (Neb. 2011) (stating that declining the discovery rule assists in UCC goals of "certainty of liability, predictability, uniformity, and efficiency in commercial transactions.") Furthermore, "[i]n rejecting the discovery rule, many courts reason that the victim of conversion is often in the best position to prevent or detect the loss." *Mandolfo*, 796 N.W.2d at 611. The court takes these concerns very seriously. Efficient commercial transactions enable our economy to operate, and check holders truly are often in the best position to discover potential fraud.

On the other hand, courts applying the discovery rule to UCC conversion claims have chiefly highlighted the unfairness of denying relief to a plaintiff who did not know his rights had been violated. *See, e.g.*, *Fine v. Sovereign Bank*, 2010 WL 3001194 at *5 (D. Mass). These courts have also highlighted the corresponding policy preference of applying the discovery rule to other causes of action as well. *See id.*; *see also Stjernholm v. Life Ins. Co. of North America*, 782 P.2d 810, 811 (Colo. Ct. App. 1989). In South Carolina, these principles appear paramount—our state policy-making courts have consistently favored applying the discovery rule to the statutes of limitation for numerous causes of action. *See Tollison v. B & J Mach. Co.*, 812 F. Supp. 618 (D.S.C. 1993) (breach of warranty); *Gattis v. Chavez*, 413 F. Supp. 33, 38

---

The court notes as an aside that different Ohio courts have come to opposite conclusions regarding the discovery rule.

(D.S.C. 1976) (medical malpractice); *Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 273, 384 S.E.2d 693, 695 (1989), *overruled on other grounds by Atlas Food Systems & Servs., Inc. v. Crane Nat. Vendors Div. of Unidynamics Corp.*, 319 S.C. 556, 462 S.E.2d 858 (1995) (breach of contract); *Mills v. Killian*, 273 S.C. 66, 70, 254 S.E.2d 556, 558 (1979) (legal malpractice); *Turner v. Milliman*, 381 S.C. 101, 110–11, 671 S.E.2d 636, 640–41 (Ct. App. 2009) (fraud); *Majstorich v. Gardner*, 361 S.C. 513, 519, 604 S.E.2d 728, 732 (Ct. App. 2004) (professional negligence); *Martin v. Companion Healthcare Corp.*, 357 S.C. 570, 575–76, 593 S.E.2d 624, 627-28 (Ct. App. 2004) (subrogation); *Rumpf v. Mass. Mutual Life Ins. Co.*, 357 S.C. 386, 395-96, 593 S.E.2d 183, 187-88 (Ct. App. 2004) (insurance bad faith and others). Furthermore, South Carolina courts have regularly applied the discovery rule to common law conversion causes of action. *See, e.g.*, *Moore v. Benson*, 390 S.C. 153, 700 S.E.2d 273 (Ct. App. 2010); *Rumpf*, 357 S.C. 386, 593 S.E.2d 183. These decisions—to apply the discovery rule to such a variety of claims—reflect the principle that a party should be put on notice before his claim is barred.

Additionally, while South Carolina's codification of UCC Article 3 does not explicitly provide for a statute of limitations, neither does it explicitly decline to apply the discovery rule. However, section 36-3-103 does indicate that existing statutes and common law doctrines supplement the UCC "[u]nless displaced by the particular provisions of this Act . . . ." S.C. Code Ann. § 36-3-103 (2003). No specific provision of UCC Article 3 displaces the discovery rule as applied to the statute of limitations, and BB&T has identified no South Carolina authority suggesting otherwise.

Despite what other jurisdictions may have determined, in light of the evident bias in favor of the discovery rule expressed by South Carolina courts and the public policy preference for

ensuring a party is on notice before barring his claim, this court is confident that the South Carolina courts would apply the discovery rule to conversion claims under UCC Article 3.

## IV.

The analysis cannot cease there, however. Having determined that the discovery rule applies to UCC conversion claims, the court must now determine whether Satterfield exercised reasonable diligence such that she would be able to take advantage of the discovery rule's protections.

## A.

To do so, it is necessary to determine when "a cause of action reasonably ought to have been discovered." *Hedgepath v. American Tel. & Tel. Co.,* 348 S.C. 340, 355, 559 S.E.2d 327, 336 (Ct. App. 2001) (citing *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996)); *see also City of Newberry v. Newberry Elec. Co-Op., Inc.*, 387 S.C. 254, 260, 692 S.E.2d 510, 513 (2010) (stating that under the discovery, the "statute of limitations begins to run when the party either knew or should have known that some legal right had been invaded") (citing *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005)).

To determine when the cause of action reasonably ought to have been discovered, the courts look to when the plaintiff knew "or should have known by the exercise of reasonable diligence" that he had a cause of action for conversion. *Rumpf v. Mass. Mut. Life Ins. Co.,* 357 S.C. 386, 395, 593 S.E.2d 183, 187 (Ct. App. 2004). The South Carolina Supreme Court has "interpreted the 'exercise of reasonable diligence' to mean that the injured party must act  with some promptness where the facts and circumstances of any injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *Dean*, 321 S.C. at 363–64, 468 S.E.2d at 647 (1996) (citing *Snell v. Columbia Gun Exch., Inc.*,

276 S.C. 301, 278 S.E.2d 333 (1981)). Reasonable diligence, according to the Supreme Court, "is intrinsically tied to the issue of notice." *Rumpf*, 357 S.C. at 395, 593 S.E.2d at 187 (citing *Hedgepath*, 348 S.C. at 356, 559 S.E.2d at 336). "[O]nce a plaintiff has reason to know that she has been injured, she is obliged to conduct a reasonably diligent investigation under the circumstances and is charged for limitations purposes with constructive knowledge of the facts that such an investigation would have uncovered." *Hartnett v. Schering Corp.*, 2 F.3d 90, 92 (4th Cir. 1993). The statute of limitations begins to run at this point—when reasonable diligence would have put the aggrieved party on notice that some right has been or was invaded.

The court must decide, then, whether the circumstances of this case "would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist. *Moore*, 390 S.C. at 161, 700 S.E.2d at 277 (quoting *Young v. South Carolina Department of Corrections*, 333 S.C. 714, 719, 511 S.E.2d 413, 416 (Ct. App. 1999)). This question, when a party should have had notice of an injury, is an objective question. *Moore*, 390 S.C. at 161, 700 S.E.2d at 277; *see also Hedgepath*, 348 S.C. at 356, 559 S.E.2d at 336. The court essentially must ask what an objectively reasonable person would have done under similar circumstances.

BB&T argues that even if the discovery rule applies, Mauldin Furniture's claims are barred because Satterfield's actions constituted an objectively unreasonable failure to exercise proper diligence: circumstances were such that Satterfield was required to exercise a higher level of diligence than she did and would have therefore discovered Hogan's activities. *See Strother v. Lexington County Recreation Comm'n*, 324 S.C. 611, 624, 479 S.E.2d 822, 830 (Ct. App. 1996) ("defining constructive notice as "information or knowledge of a fact imputed by law to a person . . . because he could have discovered the fact by proper diligence, and his situation was such as

to cast upon him the duty of inquiring into it.") For example, BB&T asserts that Satterfield had the duty to inquire further into the company's finances, review the accounts, interact with employees, or supervise Hogan, especially when Hogan continually informed her that Mauldin Furniture was not making any money. BB&T asserts that the failure to do so under the circumstances constitutes a lack of reasonable diligence. On the other hand, Mauldin Furniture asserts that Satterfield had no reason to inquire further into the situation because nothing had alerted her to the situation. Mauldin Furniture further asserts that Satterfield's health condition prevented her from exercising more oversight over the company that she otherwise would have. Viewing this evidence in the light most favorable to the non-moving party, Mauldin Furniture, the court  holds the evidence presents a genuine issue of material fact that should be left for determination at trial. *See Rothrock v. Copeland*, 305 S.C. 402, 405, 409 S.E.2d 366, 367–68 (1991) ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

## B.

BB&T also asserts that Mauldin Furniture was on constructive notice because (1) Hogan, an officer of Mauldin Furniture, knew about the alleged fraudulent activity; (2) one or more of the Mauldin Furniture employees knew of the activity; and (3) Mauldin Furniture's accountants possessed knowledge about the existence of Hogan Company.

### 1.)

First, notice of facts by an officer or agent of a corporation is normally imputed to the corporation. *See Bankers Trust of S.C. v. Bruce*, 283 S.C. 408, 423, 323 S.E.2d 523, 532 (Ct. App. 1984) ("It is well established that a principal is affected with constructive knowledge of all

materials facts of which his agent receives notice while acting within the scope of his authority.")
(citing *Crystal Ice Co. v. First Colonial*, 273 S.C. 306, 257 S.E.2d 496 (1979)). However, "[f]or
purposes of determining a principal's legal relations with a third party, notice of a fact that an
agent knows or has reason to know *is not imputed to the principal if the agent acts adversely to
the principal* in a transaction or matter, intending to act solely for the agent's own purposes or
those of another person." Restatement (Third) of Agency § 5.04 (emphasis added); *see also
White v. FDIC*, 122 F.2d 770, 776 (4th Cir. 1941) ("[T]he personal interest of a director adverse
to that of the corporation will prevent notice to him being deemed notice to the corporation . . .
."); *Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000) ("Under the exception,
management misconduct will not be imputed to the corporation if the officer acted entirely in his
own interests and adversely to the interests of the corporation . . . . The theory is that 'where an
agent, though ostensibly acting in the business of the principal, is really committing a fraud for
his own benefit, he is acting outside of the scope of his agency, and it would therefore be most
unjust to charge the principal with knowledge of it.'") (citations omitted); *First Nat'l Bank of
Sikeston v. Transamerica Ins. Co.*, 514 F.2d 981, 986 (8th Cir. 1975) ("When the employer,
officer or director's interest is adverse to the corporation, his knowledge is not imputed to it.").
Here, Mauldin Furniture has made serious allegations of fraudulent activity against Hogan.
Whether Hogan was acting on behalf of Mauldin Furniture—and by implication, whether his
own knowledge of the activity is imputed to Mauldin Furniture—is ultimately a genuine issue of
material fact for the jury and cannot be decided at the summary judgment stage. *See Rothrock*,
305 S.C. at 405, 409 S.E.2d at 367–68 ("In determining whether summary judgment is
appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact
exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is

desirable . . . .") (citations omitted).

**2.)**

BB&T also alleges that knowledge of Hogan's activities is imputed to Mauldin Furniture because several employees were aware of the activities. The court rejects this contention.

Courts have widely rejected the notion that simple ministerial employees of a corporation could impute knowledge to the corporation. *See Craig v. Cont'l Ins. Co.*, 141 U.S. 638, 647 (1891) (holding that knowledge of agent was not imputed to the corporation where agent "was at most a mere employee of the corporation."); *see also Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (6th Cir. 1995) (holding that corporation "may be charged with the knowledge of any of its officers or management employees" who acquired knowledge within scope of employment). Here, Noah Owens and Melissa Saunders, the two ministerial employees in question, had no management role at Mauldin Furniture whatsoever.[10] Hogan was the sole manager of the day-to-day and corporate activities of Mauldin Furniture. Even though these two individuals were aware of Hogan Company's existence and may have even participated in altering checks, the court holds that any knowledge obtained by them was not imputed to Mauldin Furniture.

**3.)**

BB&T also argues that Mauldin Furniture's accountant was aware that checks were written from Mauldin Furniture to Hogan Company. BB&T alleges that this knowledge was imputed to Mauldin Furniture and put Mauldin Furniture on notice that Hogan was depositing checks payable to Mauldin Furniture into the Hogan Company account. The court also rejects this contention.

---

[10]    They assembled furniture, loaded and unloaded furniture, sold furniture to customers, wrote invoices, deposited checks.

Accountants are independent contractors, not agents. *See, e.g.*, *Commonwealth v. DiJohnson*, 830 N.E.2d 1103, 1107 (Mass. Ct. App. 2005); *Fleming v. Acadian Geophysical Servs., Inc.*, 827 So.2d 623, 628 (La. Ct. App. 2002). Of course, any knowledge obtained by an independent contractor is not imputed to the principal or corporation that hired him. *See Blue Cross & Blue Shield of S.C. v. W.R. Grace & Co.*, 781 F. Supp. 420, 425 (D.S.C. 1991) (holding that an independent contractor was not an agent and any knowledge of the independent contractor was not imputed to the principal); *see also, e.g.*, *In re Central Gulf Lines, Inc.*, 176 F. Supp. 2d 599, 618 (E.D. La. 2001); *Gray v. Certain Underwriters of Lloyd's of London*, 1999 WL 22844 (E.D. La. Jan. 15, 1999). Accordingly, the court holds that any knowledge by the account was not imputed to Mauldin Furniture and therefore did not put Mauldin Furniture on constructive notice.

## V.

Having addressed the statute of limitations and reasonable discovery issues, the court will now turn to the merits of Mauldin Furniture's specific claims. As described above, Mauldin Furniture has divided the 531 checks at issue into five categories, A–E. Mauldin Furniture argues that it is entitled to summary judgment as to each category, while BB&T argues that it is entitled to summary judgment on Categories F, D, and B.[11] The court holds that the parties have introduced genuine issues of material fact as to each category. Therefore, summary judgment is inappropriate.

As stated above, the UCC conversion statute provides that "[a]n instrument is converted when . . . "it is paid on a forged indorsement." S.C. Code Ann. § 36-3-419 (2003). South Carolina law additionally establishes that an unauthorized indorsement is treated the same as a

---

[11]    BB&T, of course, also argues that it is entitled to summary judgment on all claims for other reasons discussed elsewhere, but this section concerns only the merits of claims as to specific categories.

forged indorsement—and one who pays on such an indorsement may be liable for conversion. *See Equitable Life Assurance Soc'y of the U.S. v. Okey*, 812 F.2d 906, 908 (4th Cir. 1987) ("Under § 36-3-419 of the South Carolina Commercial Code, an action for conversion lies when an instrument is paid on a forged indorsement. An unauthorized indorsement receives the same treatment as a forgery."); *Flavor-Inn, Inc. v. NCNB Nat. Bank of S.C.*, 309 S.C. 508, 510, 424 S.E.2d 534, 535 n.2 (Ct. App. 1992) ("Forged and unauthorized indorsements are treated the same under § 36-3-419."); *see also* S.C. Code Ann. § 36-1-201(43) (2003) ("'Unauthorized' signature or indorsement means one made without actual, implied or apparent authority and includes a forgery.").

One of the key recurring issues in the discussion of the merits of Mauldin Furniture's claims as to each category concerns Hogan's authority as a director/officer of Mauldin Furniture. Essentially, BB&T argues that this status gave him the ability to "make financial decisions on behalf of the company," which included indorsing checks in various ways and depositing them in Hogan Company's account. Mauldin Furniture argues that his authority did not extend to cover these indorsements.

Without a lack of authority, a conversion claim cannot lie—this lack of authority is at the heart of every conversion claim. *See Flavor-Inn,* 309 S.C. at 510, 424 S.E.2d at 535 n.2 ("Payment on an unauthorized indorsement is a conversion"). However, officers and directors owe the duty of loyalty to their corporations. *See* SC Code Ann. §§ 33-8-300(a)(3) & 33-8-310 (2006). Depositing checks payable to a corporation for one's personal or familial benefit would clearly violate the duty of loyalty. Additionally, as Mauldin Furniture notes, "[a] third party can rely on the apparent authority of an agent until something occurs that would cause a reasonable person to inquire further into the circumstances." *First Interstate Bank of Tex. v. First Nat'l*

*Bank*, 928 F.2d 153, 158 (5th Cir. 1991); *see also Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 702 F. Supp. 1005, 1015 (S.D.N.Y. 1988) ("[T]he principal will not be bound by the act of his agent in excess of his actual authority where the party doing business with the agent knows the extent of the latter's authority, or where the facts and circumstances are such as to put him on inquiry as to the power and good faith of the agent.") (internal citations omitted). Mauldin Furniture argues that the deposit of 531 checks payable to one corporation into another corporation's account, with various alterations, over the period of eight years arguably put BB&T on notice such that it could not rely on Hogan's apparent authority as an officer/director of Mauldin Furniture. The court holds that this issue, whether Hogan operated outside his actual or apparent authority, is a genuine issue of material fact. *See Rothrock*, 305 S.C. at 405, 409 S.E.2d at 367–68 ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

    With these principles of law in mind, the court will turn to each category.

## A.

    Category A checks are checks made payable to "Mauldin Furniture" and indorsed with a Mauldin Furniture Galleries "For Deposit Only" stamp (and listing the Mauldin Furniture Account number). South Carolina law requires that a bank "pay or apply any value given . . . consistently with the indorsement" if the check includes a conditional "for deposit" indorsement.[12] S.C. Code Ann. § 36-3-206(3) (2003); *see also Peoples Life Ins. Co. v. Cmty. Bank*, 278 S.C. 70, 292 S.E.2d 188 (1982) (holding that a conversion action can be brought

---

[12]    As noted above, the South Carolina General Assembly adopted the modified UCC Article 3 effective July 1, 2008, so all citations here refer to the pre-2008 version.

against a depositary bank under § 36-3-419). Because the checks in this category were indorsed with the restrictive "For Deposit Only" stamp, the law requires their deposit in accordance with that restrictive indorsement.[13] Mauldin Furniture argues that BB&T accepted and deposited these checks inconsistent with the restrictive indorsement and is therefore strictly liable for conversion. In response, BB&T argues that a payee who retains the benefit of a check paid on a forged indorsement has no action for conversion. *See Conwed Corp. v. First Citizens Bank & Trust Co.*, 262 S.C. 48, 53, 202 S.E.2d 22, 24 (1974) (stating when an indorsement has been forged but a payee "retains the proceeds of a check . . . and with the proceeds being applied to the obligation which the check was issued to pay, the payee has suffered no damage and . . . cannot recover against a bank for paying such check on the forged indorsement"). BB&T alleges that, at least according to Hogan, the Hogan Company was created primarily for the benefit of Mauldin Furniture and Mauldin Furniture has failed to refute Hogan's assertion that Mauldin Furniture received the benefit of these improperly deposited checks. As BB&T points out, Mauldin Furniture has yet to perform an accounting of its financial documents. However, Mauldin Furniture has introduced evidence showing that over $300,000 from the Hogan Company account was for the benefit of Hogan or his family members—not Mauldin Furniture.[14] BB&T also notes that Hogan occasionally wrote checks from Hogan Company's account directly to Mauldin Furniture. BB&T has also not performed an accounting to show how these funds were or were not related to the disputed checks. Accordingly, the court holds that these issues comprise issues of fact to be determined by a fact-finder. *See Rothrock*, 305 S.C. at 405, 409

---

[13]       The court notes that while a depositary bank is protected from liability if it acts "in good faith and in accordance with the reasonable commercial standards," that protection does not apply for failure to deposit consistent with a restrictive indorsement. S.C. Code Ann. § 36-3-419(3).

[14]       Mauldin Furniture alleges Hogan paid his taxes and landscaping bills, placed bets on horse races, and made cash payments to himself and family members out of the Hogan Company account.

S.E.2d at 367–68 ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

## B.

Category B checks are those checks made payable to "Mauldin Furniture," with no indorsement or indorsed with "AP Hogan", "AP Hogan Co.", or "AP Hogan/Mauldin Furniture Galleries." Under South Carolina law, a check may only be negotiated by a holder, which is accomplished by indorsing the check. S.C. Code Ann. § 36-3-202(1) (2003); *see id.* § 36-3-202(2) ("[a]n indorsement must be written by or on behalf of the holder . . . .")[15]; *see also id.* § 36-3-419(1)(c) (providing that an instrument is converted when paid upon a forged or unauthorized indorsement). As the payee, Mauldin Furniture was the holder for each of these checks.

As to the checks payable to Mauldin Furniture and deposited without an indorsement, section 36-3-201(3) provides that "negotiation takes effect only when the indorsement is made." Mauldin Furniture argues that without an indorsement, South Carolina law required these checks to be deposited only in Mauldin Furniture's account. In response, BB&T again argues that Mauldin Furniture received the benefit of these checks and has not proven otherwise. Again, of course, neither party has conducted an accounting.

As to the checks payable to Mauldin Furniture and indorsed with "Hogan Company" in some variation Mauldin Furniture argues that this indorsement was invalid to negotiate the checks under section 36-3-202(2) because any indorsement had to be made by Mauldin

---

[15]     A holder is "a person who is in possession of . . . an instrument . . . drawn, issued, or indorsed to him or his order . . . ." S.C. Code Ann. § 36-3-201(2).

Furniture. *Id*. ("[a]n indorsement must be written by or on behalf of the holder . . . ."). In response, BB&T argues that Hogan had the authority to negotiate these checks as a signatory on Mauldin Furniture's account. BB&T also argues again that Mauldin Furniture received the benefit of these checks. The court holds that all issues pertaining to Category B checks are issues of fact. Whether Mauldin Furniture received the benefit of any of these checks or whether Hogan had the authority to indorse these checks to Hogan Company are genuine issues of material fact. *See Rothrock*, 305 S.C. at 405, 409 S.E.2d at 367–68 ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

## C.

The one Category C check was made payable to "Anthony P Hogan Company *and* Mauldin Furniture" and indorsed with "AP Hogan". Section 36-3-116 states, "An instrument payable to the order of two or more persons . . . if not in the alternative is payable to all of them and may be negotiated, discharged, or enforced only by all of them." *See also id*. at cmt. ("[W]hen [a check] is payable to 'A and B,' all must indorse in order to negotiate."). Mauldin Furniture argues that because this check was payable to both entities, an indorsement by both entities was required to negotiate the check. BB&T, in response, argues again that Mauldin Furniture received the benefit of this check. The court holds that this check presents genuine issues of material fact. *See Rothrock*, 305 S.C. at 405, 409 S.E.2d at 367–68 ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

## D.

Category D checks were made payable to "Mauldin Furniture" but allegedly altered and marked through with "AP Hogan" made the payee. These checks contained no endorsement or were indorsed with "AP Hogan Co." or with the Mauldin Furniture "For Deposit Only" stamp. As stated above, an "instrument is converted when . . . it is paid on a forged indorsement," section § 36-3-419(1)(c), and an unauthorized indorsement is the equivalent of a forged indorsement. *Okey*, 812 F.2d 906. Mauldin Furniture argues that the alteration of the payee line does not change the fact that it was the holder of these checks and that only an authorized indorsement by Mauldin Furniture was sufficient to negotiate the check. *See* S.C. Code Ann. § 36-3-206(3). Mauldin Furniture argues that BB&T is liable under section 36-3-419 for payment on an unauthorized indorsement.

BB&T argues that the makers of those checks intended to change the payee line to AP Hogan, and Hogan's indorsements were in accordance with that intended payee. BB&T also argues that Mauldin Furniture has not put forth any evidence suggesting that the makers of these checks were not the ones who changed the payee line in accordance with their intents.[16] On the contrary, Mauldin Furniture has submitted evidence suggesting that Hogan or employees under his direction changed the payee line. Neither party has introduced testimony from the makers of the instruments evidencing their intent either way. The question of who altered the checks at issue and whether Hogan had the authority to indorse them in the manner in which he did are genuine issues of material fact. *See Rothrock*, 305 S.C. at 405, 409 S.E.2d at 367–68 ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not

---

[16] In support of this contention, BB&T identifies several checks where the altered payee line is accompanied by initials matching the signature on the check.

appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

## E.

Category E checks were made payable to "Mauldin Furniture/AP Hogan", "AP Hogan/Mauldin Furniture," "Mauldin Furniture or Anthony P. Hogan," where the "or Anthony P. Hogan" or the "Anthony P. Hogan or" is in a different handwriting. These checks contained either no indorsement or were indorsed to AP Hogan Co.

BB&T argues that these checks were made to AP Hogan (or variations thereof) OR Mauldin Furniture, in the alternative. In the event a check is made to parties in the alternative, either party may indorse the check. *See* S.C. Code Ann. § 36-3-116 (2003) ("An instrument payable to the order of two or more persons . . . (a) if in the alternative is payable to one of them and may be negotiated, discharged or enforced by any of them who has possession of it . . ."). Mauldin Furniture argues that the notations indicating the checks are in the alternative, such as the "or" or "/" were alterations likely added by Hogan or another employee under his direction. Mauldin Furniture argues that in light of the altered payee line, the indorsements were unauthorized and any payment thereto constitutes conversion under section 36-3-419(1)(c). BB&T, in response, argues that Mauldin Furniture has not introduced any evidence suggesting that the makers did not add the additional notations. Mauldin Furniture notes that on many of the checks, the alteration of the payee line is readily apparent. Whether these checks were altered by the makers (in which case Hogan's indorsement was proper) or by someone else is a question for the fact-finder. *See Rothrock*, 305 S.C. at 405, 409 S.E.2d at 367–68 ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

## V.

BB&T makes a number of affirmative defenses to Mauldin Furniture's allegations, including set off, laches, failure to mitigate damages, and estoppel. Additionally, BB&T argues that it acted in a commercially reasonable manner. Under South Carolina law, these affirmative defenses, other than the commercially reasonable manner defense, are inapplicable to conversion claims under UCC Article 3. Section 36-3-419 "comprehensively covers the field of legal theories available when a check is paid over an unauthorized indorsement." *Equitable Life Assurance Soc'y of the U.S. v. Okey*, 812 F.2d 906, 909 (4th Cir. 1987). The Fourth Circuit further stated,

> [T]he Code imposes an absolute liability against a bank that commits the act of paying over an unauthorized indorsement unless the bank can prove its own due care. When the U.C.C. sets up particular standards of care or limitations on liability, the common law is annulled to the extent it modifies these standards or changes these limitations.

*Id*. at 909 (emphasis added). Therefore, BB&T's other affirmative defenses are invalid. However, as stated above, the commercially reasonable manner defense is permitted:

> Subject to the provisions of this act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealth with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner . . . .

S.C. Code Ann. § 36-3-419(3) (2003); *see also Okey*, 812 F.2d at 908 ("Section 46-3-419(3) makes reasonable conduct an affirmative defense to be proved by the defendant collecting or depositary bank.").

Mauldin Furniture argues that BB&T acted in a commercially unreasonable manner in depositing the checks in question.[17] In support of that contention, Mauldin Furniture introduced,

---

[17]    At minimum, Mauldin Furniture asserts, it was commercially unreasonable for BB&T not to contact the

under seal, BB&T's own internal policies regarding check deposits, which, Mauldin Furniture asserts, were designed to ensure commercially reasonable practices and prevent fraudulent activity. Additionally, Mauldin Furniture has introduced testimony from an expert. BB&T disputes these contentions and states that Mauldin Furniture has not introduced evidence to establish that BB&T acted in a commercially unreasonable manner. The court is of the opinion that, while strongly suggesting as much, the simple introduction of BB&T's own internal policies and the violation thereof does not firmly establish that BB&T acted in a commercially unreasonable manner. Mauldin Furniture has not established that BB&T's policies did not comport with standard industry policy. Even if BB&T violated its own policies, those policies could be substantially more stringent than the commercial standard. As such, the court finds this issue a genuine issue of material fact. *See Rothrock*, 305 S.C. at 405, 409 S.E.2d at 367–68 ("In determining whether summary judgment is appropriate, a court must not try issues of fact, but must discern whether genuine issues of fact exist to be tried . . . . Summary judgment is not appropriate where further inquiry into the facts is desirable . . . .") (citations omitted).

## VI.

In essence, this case asks if Satterfield acted as a reasonably prudent person would have in overseeing her business and/or if BB&T acted with due care—in a commercially reasonable manner—in its handling of the checks at issue. The court holds that the parties have introduced multiple genuine issues of material fact that must be determined at trial. In light of the foregoing, Mauldin Furniture's motion for partial summary judgment is denied. (Dkt. No. 86.) BB&T's motion for summary judgment is granted in part and denied in part. (Dkt. No. 87.)[18]

---

other signatory on the account, Satterfield, even once over eight years about a single one of the 531 checks.

[18]     As stated above, the court grants BB&T's motion only as to the common law conversion claim. *See supra*, n. 6.

**IT IS SO ORDERED.**

s/Timothy M. Cain
Timothy M. Cain
United States District Judge

Greenville, South Carolina
August 27, 2012